[Merchants & Planters' National Bank v. Rice & Wilson.]

Those assignments of demurrer which are predicated on the theory that foreign corporations can not litigate in the courts of this State, unless they have complied with the constitutional and statutory provisions referred to, are untenable, and were properly overruled. The prosecution or defense of an action in the courts of this State is not the doing of business here, within the meaning of the requirement in question.—2 Mor. Corp. § 662. And the objection which denies the capacity of a foreign corporation, *i. e.*, an alien corporation, to own land, or to take a mortgage on land in this State, even when it has designated a place of business and an agent here, is equally untenable.—Mor. on Corp. §§ 360, 961; Code, § 1914.

For the error in overruling the assignment of demurrer predicated on the failure of the bill to allege compliance with our laws as to the designation of a place of business and an agent, the decree is reversed, and the cause remanded.

STONE, C. J., dissenting.

# Merchants & Planters' National Bank *v.* Rice & Wilson.

*Action on Common Counts, against Partnership.*

1. *Proof of partnership.*—Where a mercantile partnership existed between two persons, one of whom furnished all the capital, and owned all the goods and assets, while the other was only a nominal partner on a stated salary, though held out to the world as a partner; on the death of the real partner, whose wife was appointed the administratrix of his estate, and to whom he bequeathed all of his property, a new partnership between her and the surviving partner can not be presumed or implied from proof of the fact that, six months after the death of her husband, acting on the advice of a friend, she advanced $2,000 to enable the surviving partner to purchase articles represented to her to be necessary to aid him in selling out the remaining stock without loss, and collecting the outstanding debts for advances.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by the appellant, against Mrs. Mattie J. Rice and Alex. Wilson, as partners composing the firm of Rice & Wilson; and was commenced on the 9th May, 1888. The complaint contained only the common counts,

each claiming $1,000, for money loaned, goods sold and delivered, on account stated, &c. The record does not show what pleas were filed, but the only controverted question seems to have been, whether Mrs. Rice was liable as a partner with said Alex. Wilson. Under the rulings of the court, in charges given and refused, the jury returned a verdict against Wilson, for $739.15, and in favor of Mrs. Rice. The charges given, and the refusal of several charges asked, are assigned as error. The opinion states the material facts.

GRAVES & BLAKEY, and BRICKELL, SEMPLE & GUNTER, for appellant.

A. A. WILEY, and MOORE & FINLEY, contra.

STONE, C. J.—A mercantile business of several years duration was conducted in the city of Montgomery, in the firm name of Rice & Wilson. The entire capital of the firm was furnished by Rice, and was his property. Wilson allowed himself to be held out to the world as a partner, but, as between themselves, he was not a partner. He was not directly interested in the profits and losses.—2 Brick. Dig. 300, §§ 25–7. He was a mere employee, his compensation being one half the profits, not to exceed one hundred dollars per month. The firm did its banking business with the appellant, which bank had its *situs* in Montgomery.

Rice died May 30, 1887, leaving a surviving widow, Mattie Rice, who succeeded to the ownership of his entire estate, and she became the administratrix.

Wilson continued the business in the name of Rice & Wilson, until the entire stock of goods was sold to Stone, December 31, 1887—seven months after the dissolution of the partnership by Rice's death.—*Espy v. Comer*, 76 Ala. 501; *Vincent v. Martin*, 79 Ala. 540. No understanding, or interview, is shown to have been had between Wilson and Mrs. Rice, in reference to a continuance of the business, or in what name it should be continued, until the latter part of November, 1887. Wilson and another witness, Vandiver, testify that about that time one or more interviews were had with Mrs. Rice, with reference to money to be furnished by her to carry on the business, and promote the sale of the goods on hand; and Wilson's testimony tends to show that she furnished two thousand dollars. These witnesses characterize this negotiation, and subsequent furnishing of the

[Merchants & Planters' National Bank v. Rice & Wilson.]

two thousand dollars, as looking to a formation of a partnership between her and Wilson. Wilson's testimony tends to show that the furnishing of the money by Mrs. Rice consummated the agreement for a new partnership between her and himself, which, he alleges, Vandiver, the other witness, had negotiated. He says no partnership was agreed on with him, and Vandiver testifies that no terms of partnership were agreed on between him and Mrs. Rice.

Conceding everything the testimony of these two witnesses tends to prove, and ignoring the entire effect and tendency of all opposing testimony, we think the following is the only rational interpretation it is susceptible of: Mrs. Rice sought the counsel of Mr. Vandiver, as to what course she should pursue in reference to the mercantile business, the ownership of which had devolved on her by the death of her husband. She expressed a desire to have it wound up speedily. After looking into the business, Mr. Vandiver advised against closing it at that time, telling her it would be detrimental to her interest, and that she could not then part with the services of Mr. Wilson safely. The firm had considerable outstanding dues, and had merchandise, the sale of which would be facilitated and hastened by replenishing the stock with articles of prime necessity in that line of trade. He advised her to furnish two thousand dollars, to be invested in meat, corn and oats, which would sell readily for cash. This, he said, would preserve the trade and business of the store, so as to enable Wilson to sell the other goods, and would aid him in collecting the unpaid dues. If it was added that the business should continue in the same name, Rice & Wilson, that is of no significance. Such course is not unusual in winding up a mercantile firm, dissolved by the death of one of the partners. It did not, and could not, tend to show that she consented to substitute herself as a partner, in the place of her deceased husband, and thus form a new firm. The goods were hers, the uncollected dues were hers, and any loss sustained in disposing of the one, and in realizing the other, would be her loss. The implications might be different, if Wilson had owned any interest in the stock in trade. Giving the largest interpretation to the testimony of Vandiver and Wilson, and conceding that Mrs. Rice knowingly and intentionally furnished the two thousand dollars, to be invested in meat, corn and oats, as a help in disposing of the broken stock on hand, of collecting the unpaid dues, and of winding up the business—and this is the whole scope

[Burks v. Bragg.]

of their testimony, when properly interpreted—these facts, neither separately nor collectively, tend to prove that she entered into a new enterprise, a new partnership. They would authorize Wilson to employ the money for the purpose for which it was furnished, but they would not authorize him to create a debt binding on her. It did not, and could not, constitute a partnership. And, it should be added, there is no testimony that Mrs. Rice was ever informed that she was represented, or held out to the public, as a member of the firm.

Tested by the construction we have given plaintiff's testimony, there was no error in the court's several rulings. In fact, if no testimony had been introduced for her, and the general charge had been asked in her favor, it ought to have been given.

Affirmed.